**In re CAPITAL UNDERWRITERS, INC. SECURITIES LITIGATION.**

**No. 356.**

Judicial Panel on Multidistrict Litigation.

Jan. 18, 1979.

Before JOHN MINOR WISDOM, Chairman, and EDWARD WEINFELD\*, EDWIN A. ROBSON, STANLEY A. WEIGEL\*, ANDREW A. CAFFREY and ROY W. HARPER, Judges of the Panel.

OPINION AND ORDER

PER CURIAM.

This litigation consists of nine actions pending in three federal districts: three in the Northern District of California (*Mendelsohn, McDonald* and *Wheeler*); four in the District of New Jersey (*Jala I, Jala II, Johnson* and *Francis*); and two in the District of Hawaii (*Batey* and *Carter*). The claims in each action arise out of alleged fraudulent conduct in the sale of limited partnership interests in one or more real estate projects marketed by Capital Under-

\* Judges Weinfeld and Wiegel did not participate in the decision of this matter.

writers, Inc., its affiliates and representatives, and/or the alleged misuse of funds received in the sale of these partnerships. One of the New Jersey actions also involves, *inter alia,* alleged misrepresentations concerning the intended use for one of those projects of proceeds from the sale of a debenture issued by Capital Holdings, Inc., a corporation affiliated with Capital Underwriters. The investments allegedly were generally made after personal contacts with officers or employees of Capital Underwriters or with representatives of certain investment firms, and the receipt of a variety of written documents. Gary L. DiGirolamo, Capital Underwriters' president, is a defendant in all actions. Capital Underwriters is a defendant in all but one action, and Capital Holdings is a defendant in all but two actions.[1]

*Mendelsohn* and *McDonald,* both pending in the Northern District of California before the Honorable William H. Orrick, Jr., were filed in, respectively, 1975 and 1976, and have been consolidated for all purposes since September 1976. The named plaintiffs in these actions seek to represent a class of all persons who, between 1972 and 1975, purchased interests in one or more of eleven different limited partnerships purportedly created to finance real estate developments in Hawaii and Guam. On October 27, 1978, Judge Orrick held a hearing concerning, *inter alia,* the class determination requests, and deferred ruling on these requests.

Named as defendants in both *Mendelsohn* and *McDonald* are DiGirolamo, Capital Underwriters, several present or former directors of Capital Underwriters, and a number of other individuals and entities allegedly associated with DiGirolamo. *McDonald* also includes certain attorney and accountant defendants. The complaints in both

actions allege, *inter alia,* that the defendants participated in a scheme to sell interests in limited partnerships for non-existent real estate projects. Plaintiffs allege that these sales violated both federal and California securities laws, and also constituted negligence and common law fraud. Plaintiffs in *McDonald* also allege that an accountant and certain attorneys, and their firms, who participated in the sale of the partnership interests committed professional malpractice and aided and abetted the fraudulent conduct of the other defendants. Considerable discovery and other pretrial proceedings have already taken place in *Mendelsohn* and *McDonald.*

*Wheeler,* the third California action before the Panel, has also been assigned to Judge Orrick. The complaint in this action, which was filed in August 1978, is very similar to the complaint in *McDonald,* and plaintiffs in *Wheeler* seek to represent the same class that is sought in the consolidated *Mendelsohn* and *McDonald* actions. Plaintiffs in *Wheeler* have filed a motion to consolidate the action with *Mendelsohn* and *McDonald.*

The two *Jala* actions, both pending in the District of New Jersey, have been consolidated for all purposes. Defendants in the *Jala* actions include DiGirolamo, four other present or former directors of Capital Underwriters, a financial advisor and his investment firm, a second investment firm, and certain accountants and alleged real estate experts. Six of these defendants are also named as defendants in *Mendelsohn* and *McDonald.* Although Capital Underwriters, Capital Holdings and the attorney defendants in *Mendelsohn* and *McDonald* are not named as defendants in the *Jala* complaints, Capital Underwriters, Capital Holdings and some of these attorneys have been named as third party defendants in the *Jala* actions.

1. In addition to the nine actions before the Panel, other related actions have been filed in both federal and state courts. The Securities and Exchange Commission (SEC) has filed a civil action in the District of Hawaii against Capital Underwriters, DiGirolamo, Capital Underwriters' predecessor corporation, and Capital Holdings. *That action is still pending.* DiGirolamo has plead guilty to several felony counts of a multiple count federal securities law indictment in the District of Hawaii, and he has been indicted there for evasion of federal income taxes. Numerous private civil actions have been filed in state courts in New Jersey and Hawaii.

In *Jala I,* plaintiffs seek to represent a class consisting of all persons who sustained a loss as a result of the purchase of limited partnership interests in a particular one of the real estate projects involved in the California actions before the Panel. In *Jala II,* which has not been brought as a class action, plaintiffs allege that defendants fraudulently induced plaintiffs to purchase a debenture issued by Capital Holdings and secured by the limited partnership interests involved in *Jala I.* Plaintiffs allege that defendants violated the federal securities statutes in connection with the sale of, respectively, the interests in the limited partnership and the Capital Holding debenture. Plaintiffs also allege that the accountant and real estate experts named as defendants negligently performed their duties in connection with the sale of these interests and the debenture. In both actions, plaintiffs seek damages and injunctive relief. In *Jala II,* plaintiffs also seek rescission of the debenture purchase.

On May 30, 1978, a receiver appointed by the court in the SEC's Hawaii action, see note 1 *supra,* filed in the *Jala* actions a notice of a federal stay order entered by the Hawaii district court on February 2, 1977. That order stays, except by leave of court, most proceedings against Capital Underwriters, its predecessor corporation, and Capital Holdings. Soon thereafter, the court in the *Jala* actions entered an order "administratively terminating" these actions.[2] Prior to the entry of this order, relatively minimal discovery and other pretrial proceedings had been initiated in the *Jala* actions.

*Johnson,* also pending in the District of New Jersey, has been brought by an individual who invested in the same limited partnership involved in the *Jala* actions. The defendants in *Johnson,* most of which are also defendants in the *Jala* actions, include DiGirolamo, Capital Underwriters, an investment firm and one of this firm's financial advisers. The complaint seeks damages and injunctive relief as a result of

defendants' alleged fraud, negligence, and violation of federal and New Jersey securities laws.

On March 23, 1978, the New Jersey district court stayed *Johnson* because of the pendency of the federal income tax evasion indictment against DiGirolamo in the District of Hawaii. See note 1 *supra.* A notice of the Hawaii district court's stay order in the SEC action has also been filed in *Johnson.* Pretrial proceedings in this action are in an incipient stage.

*Francis,* the fourth New Jersey action before the Panel, is brought by three individuals who purchased interests in two of the eleven limited partnerships involved in the California actions before the Panel. These two limited partnerships are not involved in the *Jala* actions or *Johnson.* Defendants include DiGirolamo, Capital Underwriters, Capital Holdings, and the investment firm and its financial adviser named as defendants in the *Jala* actions and *Johnson.* Plaintiffs allege that defendants' conduct regarding sales of these partnership interests violated federal and New Jersey securities laws and constituted common law fraud.

In accordance with the stay order issued in the SEC's action in Hawaii, the district court in New Jersey stayed *Francis* on June 2, 1978. Prior to that time, only preliminary pretrial proceedings had taken place in *Francis.*

*Batey,* the first of two Hawaii actions before the Panel, was brought by several individuals who purchased interests in one of the limited partnerships also involved in only the California actions before the Panel. DiGirolamo and his wife are the only defendants named in the complaint. These defendants have filed a third party complaint against one of Capital Underwriters' present or former directors, who is also a defendant in the New Jersey actions before the Panel. The complaint in this action seeks damages under federal and Hawaii securities laws, and principles of common law fraud, for defendants' alleged securities

---

**2.** We are advised by the clerk's office in the District of New Jersey that the effect of this order is to stay all proceedings in the *Jala* actions.

fraud. Plaintiffs also seek to impose a constructive trust upon assets allegedly purchased with funds wrongfully taken from the plaintiffs.

*Carter,* also pending in the District of Hawaii, was commenced by the receiver appointed for Capital Underwriters, its predecessor corporation and Capital Holdings by the court in the SEC's action. Most of the defendants in the other actions before the Panel, as well as the plaintiff in *Batey,* are either defendants or third party defendants in *Carter.* In this action, the receiver is attempting to recover allegedly misapplied funds and assets belonging to the receivership corporations. Extensive pretrial proceedings have taken place in *Carter,* and certain funds and other assets have been recovered. While additional assets are still being sought, the receiver states in his memorandum before the Panel that "[if] no further assets or causes of action are uncovered which fit within the perimeters of the Carter Action, it is not anticipated at the present time that the receiver will continue to [prosecute] the action, because to do so would be an unnecessary and unproductive expense to the estate."

Plaintiffs in *Mendelsohn* and *McDonald* originally moved the Panel, pursuant to 28 U.S.C. § 1407, to transfer *Jala I* to the Northern District of California for coordinated or consolidated pretrial proceedings with *Mendelsohn* and *McDonald.* The Panel subsequently issued orders to show cause why *Wheeler, Jala II, Johnson, Francis, Batey* and *Carter* should not also be transferred pursuant to Section 1407. The positions of movants and respondents are summarized as follows:

1) Movants favor centralization of *Mendelsohn, McDonald, Wheeler* and the *Jala* actions in the Northern District of California. These parties take no position concerning transfer of *Batey* and *Carter,* and inferentially oppose transfer of *Johnson* and *Francis.*

2) Plaintiff in *Johnson* "acquiesces" in transfer of that action, but takes no position concerning a transferee district.

3) DiGirolamo takes no position concerning transfer. Should transfer be ordered, DiGirolamo urges that the Northern District of California is the only appropriate transferee forum.

4) All other responding parties oppose transfer. One opponent contends that, should the Panel find transfer appropriate, this litigation should be centralized in the District of Hawaii.

We find that these actions involve common questions of fact and that transfer of the actions to the Northern District of California pursuant to Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

While most of the opponents of transfer acknowledge that these actions may involve some common questions of fact, all opponents argue that disparate factual and legal theories predominate. These parties contend that the claims in each action center on the purchase of interests in one or more of eleven different limited partnerships by different plaintiffs from a variety of different defendants at different times over a four to five year period. Moreover, they assert, the factual basis for plaintiffs' claims arise primarily out of oral solicitations, not a common written document or documents applicable to all purchasers. Under these circumstances, opponents maintain, each plaintiff must present individual proof of the manner in which each investment decision was made, as well as proof of how the conduct of each defendant caused the damages allegedly sustained. Thus, opponents conclude, discovery and other pretrial proceedings on any matters common to all actions would be minimal.

Opponents deny that the *Mendelsohn, McDonald* and *Wheeler* plaintiffs' attempts to represent a class of all persons who purchased partnership interests from defendants supplies a unifying theme to this litigation. Opponents contend that these actions, as well as the *Jala* actions, are not proper class actions.

In particular, the receiver-plaintiff in *Carter* denies that his action and the other

actions in this litigation share significant questions of fact. The complaint in *Carter*, this plaintiff contends, seeks the recovery of funds allegedly misappropriated from the receivership corporations after those funds had been raised, and does not involve the manner in which the funds were raised.

Because opponents perceive that individual questions of fact and law predominate in this litigation, opponents contend that coordinated or consolidated pretrial proceedings would 1) entangle the parties in complicated proceedings often having no relationship to particular claims or parties in any given action; 2) increase the costs of litigation; and 3) unduly delay resolution of the entire litigation.

Several opponents argue that, to the extent coordination of efforts could be helpful in this litigation, voluntary cooperation among the parties, counsel and courts involved is a suitable alternative to Section 1407 transfer. Plaintiffs Jala, in fact, move the Panel to order the exchange of discovery in the respective actions and to order cooperation and consultation among the judges to whom these actions presently are assigned.

Finally, two defendants contend that the subject of Section 1407 transfer is inappropriate and improper at the present time because of the stay order entered by the Hawaii district court in the SEC's action. These parties argue that the Panel should honor the stay. Plaintiff in *Carter* also argues that the Panel should honor this stay order, at least insofar as the transfer of *Carter* is concerned. In addition, the two defendants maintain that the stay order in the *Jala* actions renders "problematic" any action by the Panel with respect to those actions.

██ We find these arguments unpersuasive. While we recognize that some unique factual questions may be involved in certain of the actions before us, we are convinced that these actions all share a plethora of complex questions of fact concerning the method of operation of the limited partnerships sold by Capital Underwriters and the businesses and individuals with which it was associated. We note, in particular, that plaintiffs in *Mendelsohn* and *McDonald* have argued before us that each limited partnership involved in this litigation was merely one aspect of a

> "Ponzi Scheme" whereby partnerships were formed ostensibly for the purpose of investing in specific real estate ventures, investors were promised a return of their investment plus a specified profit in a specific [period of] time, the monies so collected by Capital Underwriters, Inc. were in large part misappropriated and investors in earlier projects were paid their investment and the specified profit, not from the success or failure of the project in question, but from the proceeds of the sales of subsequent partnership interests.

It is clear that questions relating to the alleged existence of this scheme will be a focus of discovery and other pretrial proceedings in each of these actions. The parties in these actions will have to depose many identical parties and witnesses, and examine many of the same documents, in order to prepare these actions for trial. Thus coordinated or consolidated pretrial proceedings will prevent duplicative discovery and avoid the possibility of conflicting pretrial rulings. *See In re Investors Funding Corp. of New York Securities Litigation,* 437 F.Supp. 1199, 1200–02 (Jud.Pan. Mult.Lit.1977). The need for centralization is augmented by the presence of overlapping class determination requests in the California actions and one of the New Jersey actions.

██ While voluntary coordination of pretrial efforts is always commendable,[3] transfer of these actions to a single district under Section 1407 will ensure the streamlining of discovery and all other pretrial proceedings as well.[4] *See In re Common-*

---

**3.** The record before the Panel does not reflect that any party has initiated efforts at voluntary cooperation among the parties, counsel or courts involved in this litigation.

**4.** The *Jala* plaintiffs' motion that the Panel itself order the exchange of discovery and order cooperation among the judges to whom these actions are assigned is based on a misunder-

*wealth Oil/Tesoro Petroleum Securities Litigation,* 458 F.Supp. 225, 229 (Jud.Pan.Mult. Lit.1978); *In re New York City Municipal Securities Litigation,* 439 F.Supp. 267, 269 (Jud.Pan.Mult.Lit.1977). The transferee judge, of course, will have the flexibility and overall perspective of this litigation to design a pretrial program that will accommodate the needs of each party for any unique discovery or judicial attention concurrently with the common pretrial matters and, as a result, the litigation will harmoniously proceed for the benefit of the parties, their witnesses and the judiciary. *See In re Republic National-Realty Equities Securities Litigation,* 382 F.Supp. 1403, 1405–06 (Jud.Pan.Mult.Lit.1974). No party must participate in pretrial proceedings that that party believes will not affect its interests. *See, e. g., Manual for Complex Litigation,* Parts I and II, § 2.31 (Rev. ed. 1977).

■ The fact that the *Jala* actions, *Johnson* and *Francis* have been stayed in the District of New Jersey does not affect the authority of the Panel to transfer these actions, nor does Section 1407 transfer itself affect the present status of these four actions. In *In re Franklin National Bank Securities Litigation,* 393 F.Supp. 1093, 1095–96 (Jud.Pan.Mult.Lit.1975), the Panel was presented with an analogous situation and stated as follows:

> Transfer of these actions under Section 1407 in no way affects the operation of the stay brought about by Bankruptcy Rule 401. We are simply indicating the place where the pretrial proceedings of these actions will occur. The question of the effect of the bankruptcy stay and any modification thereof is entirely a problem to be worked out by the transferee court, the bankruptcy court and the parties. A Section 1407 transfer will produce the salutary consequence of having a single judge coordinate these actions with the bankruptcy proceedings and thereby eliminate the possibility of inconsistent rulings.

standing of Section 1407. The Panel has neither the power nor the inclination to dictate in any way the manner in which transferor or transferee judges supervise actions pending be-

■ Although one defendant suggests otherwise, we believe that the advantages of coordinated or consolidated pretrial proceedings can best be obtained by selecting the Northern District of California as the transferee forum for this litigation. In the course of supervising the California actions, Judge Orrick has become thoroughly acquainted with the factual background of all the actions inasmuch as more extensive discovery and other pretrial proceedings have proceeded in the actions before him than in any other action before the Panel. Hence, he is clearly in the best position to supervise this litigation toward its just and expeditious termination. *See In re Griseofulvin Antitrust Litigation,* 395 F.Supp. 1402, 1403 (Jud.Pan.Mult.Lit.1975).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the following Schedule A and pending in districts other than the Northern District of California be, and the same hereby are, transferred to the Northern District of California and, with consent of that court, assigned to the Honorable William H. Orrick, Jr. for coordinated or consolidated pretrial proceedings with the actions already pending there and listed on Schedule A.

### SCHEDULE A

| Northern District of California | Civil Action No. |
| --- | --- |
| Paul Mendelsohn v. Capital Underwriters, Inc., et al. | C–75–1259–WHO |
| George S. McDonald, et al. v. Capital Underwriters, Inc., et al. | C–76–1492–WHO |
| Harold Wheeler, et al. v. Carlsmith, Carlsmith, Wichman & Case, et al. | C–78–1737–WHO |

| District of New Jersey | |
| --- | --- |
| Helen B. Jala, et al. v. Gary L. DiGirolamo, et al. | 77–0665 |
| Matty W. Jala, et al. v. Gary L. DiGirolamo, et al. | 77–0554 |
| Michael D. Francis, et al. v. Benjamin Rabin, et al. | 76–966 |
| Alice Y. Johnson v. Washington Capital Corp., et al. | 77–867 |

fore them. *See In re Molinaro/Catanzaro Patent Litigation,* 402 F.Supp. 1404, 1406 (Jud.Pan. Mult.Lit.1975); *In re Plumbing Fixture Cases,* 298 F.Supp. 484, 489 (Jud.Pan.Mult.Lit.1968).

**District of Hawaii**

Thomas O. Batey, et al. v. Gary L. DiGirolamo, et al.    76–0103